IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CALLWAVE COMMUNICATIONS, LLC.,

    Plaintiff,

v.

VERIZON SERVICES CORP. CELLCO
PARTNERSHIP D/B/A VERIZON WIRELESS

    Defendant,

TELECOMMUNICATION SYSTEMS INC.,

    Intervenor.

No. 12-cv-1704 (RGA)

## MEMORANDUM ORDER

Regret is no basis in the law to undo a contract made. On this guiding principle, Plaintiff Callwave's motion (D.I. 658) to enforce a settlement agreement between itself and third party Telecommunication System Inc. is **GRANTED**.

Callwave sued Defendants Verizon and Google for infringing U.S. Patent No. 6,771,970. TCS supplies the accused systems to Verizon. Accordingly, TCS has indemnified Verizon.

An exchange of emails and phone calls between Callwave and TCS culminated in an August 8, 2016 email that reads:

> [T]hank you for the call today and for Callwave's counter proposal to the remaining terms in disagreement—i.e., payment. We understand Callwave's counter-proposal for this term is $850k for the first payment, and $300k for the second payment. My client accepts.

> Please provide us a draft of the settlement agreement in addition to the motion to stay.

(D.I. 660-1 at 2). Two days later, the parties filed a joint stipulation and agreement to stay the case because they had "reached an agreement in principle regarding settlement...." (D.I. 537). From that date, TCS and Callwave marched forward in their attempt to memorialize the agreement in a formal contract. Drafts, comments, and edits were exchanged. (D.I. 660-1 at 18–85).

On September 15, though, the attempt to formalize the agreement in writing hit a bump. As Google remained in the case, I ruled on a § 101 motion and invalidated the '970 patent. That ruling is now on appeal.

Following my order, the "agreement in principle" transformed to an agreement to agree in TCS's eye. TCS refused to continue the effort to reduce the agreement to writing. It now argues that comments on drafts show there was not agreement on all of the essential terms.

Delaware law directs me to enforce a settlement agreement if "a reasonable negotiator...would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential...." *Loppert v. Windsortech, Inc.*, 865 A.2d 1282, 1285 (Del. Ch. 2004). The inquiry is an objective one. *Id.* When the parties agree "the contract should be formally drawn up and put in writing," the lack of a formal writing does not defeat the contract absent "a *positive agreement* that it should not be binding until so

reduced to writing and formally executed." *Id.* at 1287 (quoting *Universal Products Co. v. Emerson*, 179 A. 387, 394 (Del. 1935)).

Objective indicators demonstrate that a contract was made. First, the August 8th email clearly demonstrates that TCS believed an agreement had been reached. The August 8th agreement set out the payment terms and a July 21st email set out the boundaries of the license Callwave would offer TCS. (D.I. 660-1 at 2, 7). Intermediate emails demonstrated that the terms from the July 21st email carried through and were part of the agreement struck on August 8th. (*See id.* at 2–6). For example, a July 22nd email thanked Callwave for "agreeing to the terms, other than payment" and confirming that the covenant not to sue would allow damages to accrue. (*Id.* at 5). These emails used the language of contract— "this formal offer"— and the language of resolution—"my client accepts." (*Id.* at 2, 8).

Second, the stipulation filed with this court clearly indicates an agreement had been reached. It represented to this Court that the parties had "reached an agreement in principle...." That stipulation evidences that Callwave considered the matter settled and that Verizon, an interested and close observer of the negotiations, did as well.

Furthermore, the tenor of the comments in the drafts reflect an effort to memorialize an agreement already reached. Even if TCS's characterization of the comments were correct, any revisions and comments contradicting the agreement reached on August 8th would simply be requests for modification of the agreement.

3

TCS points out there were open contract terms such as assignability, notice, choice of law, and confidentiality. (*See id.* at 7). Delaware law, however, explicitly provides that "[a] settlement agreement is enforceable if it contains all essential terms, even though it expressly leaves other matters for future negotiation." *Loppert*, 865 A.2d at 1289.

As I have found an enforceable contract existed on August 8th, specific performance of that contract is the appropriate remedy. *Id.* at 1289–90. The terms of the contract include the agreement as memorialized in the emails of July 21, 22, and August 8. In the effort to reduce the contract to writing in late August and early September, several additional terms were agreed to by TCS and Callwave and are also part of the contract. These terms were either explicitly agreed to or included in responding drafts without comment or suggested revision.

IT IS SO ORDERED this 13 day of February 2017.

/s/ Richard G. Andrews
United States District Judge

4